NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Housing Appeals Board
No. 2021-0570

APPEAL OF TOWN OF AMHERST
(New Hampshire Housing Appeals Board)

Argued: September 15, 2022
Opinion Issued: January 18, 2023

Cronin, Bisson & Zalinsky, P.C., of Manchester (Christopher B. Drescher on the brief and orally), for the petitioner.

Prunier & Prolman, P.A., of Nashua (Gerald R. Prunier on the brief and orally), for the respondents.

HICKS, J. The petitioner, the Town of Amherst (Town), appeals orders of the Housing Appeals Board (HAB) vacating the denial by the Town's planning board (Board) of subdivision and site plan approval sought by the respondents, Migrela Realty Trust II and GAM Realty Trust (collectively, the Applicant). We affirm.

The following facts were recited in the HAB's orders or relate the contents of documents in the record. In November 2020, the Applicant filed a subdivision/site plan approval application with the Board for 54 age-restricted and unrestricted housing units. The Applicant previously had been granted a

conditional use permit (CUP) for "an increased project density" of up to 54 units under the Town's since-repealed Integrated Innovative Housing Ordinance (IIHO). During the review process with respect to the subdivision/site plan application, the project's density was reduced from 54 to 49 units. The composition of age-restricted and unrestricted units was also modified, with the final plan designating 14 units as age-restricted, 65-and-older units and the remaining 35 units as unrestricted.

In April 2021, the Board denied the subdivision/site plan application for reasons that can be grouped into two general categories. First, the Board perceived conflicts between the proposed project and federal law. Specifically, in apparent reference to fair housing requirements, the denial stated:

1. The application does not require that all residents of the age restricted units be 62 or older. It requires only that one member of that household be 62 or older. . . .

2. There is a single condominium association for both the senior housing and for the unrestricted housing. While these are federal requirements, the Planning Board in the first instance is responsible for applying the law and must understand it and interpret it. If there are going to be age restricted units mixed with non-age restricted units there must be some separation, whether that be physical, whether that be a separate condominium association, some type of separation. That does not exist here. This is a particular concern in this instance because only 14 out of the 49 units are elderly housing. 14 is a minority of the units . . . . They are at the will of the majority of the unrestricted units. That is not consistent with what the federal law envisioned when it said over 62 units must be occupied solely by over 62 persons.

3. Article V of the condominium documents allows those documents to be amended by the owners with a 67% vote.

See, e.g., RSA 354-A:15, VIII (2022) (exempting "housing for older persons" from state fair housing statute's provisions regarding familial status discrimination); 42 U.S.C. § 3607(b) (2018) (exempting "housing for older persons" from Federal Fair Housing Act provisions regarding familial status discrimination).

The second reason for the denial was that "the proposed design does not protect and preserve the rural aesthetic the Town has consistently valued, as is required by Section 4.16A of the Zoning Ordinance." The Applicant appealed to the HAB, which vacated the Board's decision and remanded the matter to the

Board.[1]  The Town moved for reconsideration, which the HAB denied in a second written order.  The Town now appeals both orders.

"Our review of the HAB's decision is governed by RSA chapter 541." Appeal of Chichester Commons, LLC, 175 N.H. ___, ___ (decided Sept. 2, 2022) (slip op. at 4); see RSA 679:15 (Supp. 2021).  Accordingly, we will not set aside the HAB's order, "except for errors of law, unless [we are] satisfied, by a clear preponderance of the evidence before [us], that such order is unjust or unreasonable."  RSA 541:13 (2021).  The HAB's factual findings are "deemed to be prima facie lawful and reasonable."  Id.  "When reviewing the HAB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the HAB's findings are supported by competent evidence in the record."  Appeal of Chichester Commons, LLC, 175 N.H. at ___ (slip op. at 4).  The interpretation of a tribunal's order presents a question of law, which we review de novo.  Guy v. Town of Temple, 157 N.H. 642, 649 (2008).

The HAB's review of a planning board's decision is similarly governed by statute.  See Appeal of Chichester Commons, LLC, 175 N.H. at ___ (slip op. at 4).  The HAB "shall not reverse or modify a decision except for errors of law or if the board is persuaded by the balance of probabilities, on the evidence before it, that said decision is unreasonable."  RSA 679:9, II (Supp. 2021).

The Town first contends that the HAB "erred in vacating and remanding the Board's denial of the Applicant's Subdivision Application because the denial, in part, was reasonable in light of the Applicant's continued and uncontroverted failure to comply with the elderly housing law."  (Bolding omitted.)  The Town explains that "the last version of the [Applicant's] proposal permitted younger persons to reside within an age-restricted housing unit, despite . . . that such an arrangement is in contravention of federal and state law."

---

[1] The HAB gave the Board and the Applicant three specific directives on remand.  The first two, regarding a collaborative discussion of state and federal age-restricted housing rules and the Applicant's provision of condominium documents reasonably addressing the Board's concerns over mixed-age housing, are noted later in this opinion.  The third stated:

> The Planning Board shall complete its review of the foregoing [i.e., the condominium documents] prior to any new vote, which vote may be: a) a denial based on legitimate, unsatisfied planning board requests, non-compliance with zoning ordinances or planning regulations, and valid concerns not addressed herein; or, b) an approval which can include customary and reasonable approval conditions.

Nothing in this opinion is intended to alter these directives.

The HAB found that the Board's denial of subdivision/site plan approval on the basis of "age concerns [was] clearly unreasonable, since the IIHO contemplated higher density, age-restricted housing." The HAB acknowledged that "compliance with state and federal elderly housing rules" remained an issue, and determined that "this must be a plan condition should the project be approved." Accordingly, the HAB directed, among other things, that on remand:

> The Planning Board and Applicant will engage in a collaborative discussion regarding state and federal age-restriction rules associated with the proposed, 14, age-restricted units within a 49-unit housing project;
>
> . . . The Applicant shall provide complete RSA 365-B condominium documents reasonably addressing the Planning Board's mixed-age concerns . . . .

We are not persuaded, "by a clear preponderance of the evidence before [us], that such order is unjust or unreasonable." RSA 541:13. As the HAB noted, the Applicant had been granted a CUP for a project that included "an elderly component." The HAB determined that compliance with applicable federal and state statutes could be "addressed by the condominium documents" and noted that the Board "never reviewed final condominium documents which ordinarily is a condition of approval."

The Town contends that the HAB's statement as to Town Counsel's review is "incorrect" and asserts "[t]he record reflects that Town [C]ounsel was asked to advise on the elderly housing law." The record supports the HAB's finding. The staff report created by the Town's Community Development Director for the April 7, 2021 Board meeting states that the revised Declaration of Condominium and the Declaration of Covenants, Easements and Restrictions had been sent to Town Counsel and the cost for review had been paid. The staff report further states that "Town Counsel will begin his review and report back to the Board when done." At the April 7 meeting, the civil engineer acting as the Applicant's agent noted that the legal documents were with Town Counsel for review and stated that "[t]he applicant will be happy to address any questions that arise from this review." Following the Board's denial of the application at that meeting, the Town returned the Applicant's check for the cost of Town Counsel's review with a letter explaining that "review had not yet taken place."

The Town nevertheless argues that "[g]iven the Applicant's clear misunderstanding of the law, the Planning Board was able to determine for [itself] that the condominium documents were . . . unlawful without having legal counsel officially review said documents." The HAB noted, however, that Town Counsel's review and approval of proposed condominium documents is

"customary practice" and "[o]rdinarily, a condition of site/subdivision approval." The HAB further explained that the practice ensures "that the Applicant's proposal addresses factors unique to the specific development proposal. It also allows the condominium documents to address final conditions in a Planning Board approval without the Applicant continuously guessing at what may be relevant and necessary for inclusion." The HAB was well aware that age-restricted housing must comply with federal and state statutory requirements. It observed, however, that "along with the Applicant, the Town has an obligation to pin down what was required."

The Town does not challenge the HAB's finding that review by Town Counsel is "[o]rdinarily, a condition of site/subdivision approval." We cannot say that it was unjust or unreasonable for the HAB to conclude that the Board's failure to follow this customary practice, and instead, to deny the application based on its own concerns about legal compliance, was unreasonable. See RSA 541:13; RSA 679:9, II.

The Town argues, however, that the Board is obligated by statute "to rule on an application within 65 days and since the [Applicant] consumed that time frame and more by misapplying federal and state elderly housing laws and incorrectly proclaim[ing] on the record that they satisfied the requirements of elderly housing law," the Board "properly decided to deny the application." See RSA 676:4, I(c) (Supp. 2022). We disagree. The HAB noted that the certified record reflected ongoing discussion between the parties about federal and state fair housing law requirements, continuing confusion over the age-restricted aspect of the project, and a mutual failure to effectively collaborate. Based upon our review of the record, this finding is supported by competent evidence. See Appeal of Chichester Commons, LLC, 175 N.H. at ___ (slip op. at 4). Accordingly, we reject the Town's assertion that the Applicant was solely at fault for "consum[ing] [the statutory] time frame."

Moreover, the record reflects that the Applicant had previously agreed to extend the 65-day deadline. Although a Board member stated that the Board's March 3, 2021 vote to table the application to its next meeting was "intended to make it clear that this continuance is the applicant's final opportunity," the Town makes no argument that it was legally prohibited from accepting another waiver of the 65-day deadline. See RSA 676:4, I(f) (Supp. 2022) ("The applicant may waive the requirement for planning board action within the time periods specified in subparagraph (c) and consent to such extension as may be mutually agreeable."). Accordingly, we are not persuaded that an impending deadline rendered the Board's denial "proper[]."

The Town alleges a number of other errors by the HAB, including that it: (1) "misconstrued that the denial relative to the disagreement over elderly housing was based on how many units would be designated as elderly housing"; (2) "misinterpreted the significance" of a case relied upon by the

5

Town; and (3) "misguidedly opined that state law does not prohibit a mix of age-restricted units and nonrestrictive housing units" when "[t]he issue was not the 'mixing of the units' but rather the proposed plan, as presented, did not have separate governing controls for the age-restricted housing." The Town also points out, as an additional defect in the Applicant's proposed condominium documents, that because they "allowed for amendments to be made . . . by 2/3 vote of condominium members," and the project designated only 14 out of 49 units as age-restricted, those units constituted "a minority incapable of preventing changes to the condominium association."

None of these alleged errors bears upon the reasonableness of the HAB's decision. The HAB did not conclude that the proposed condominium documents complied with all applicable laws. Rather, it found the Board's denial based upon concerns about compliance to be unreasonable when, according to customary practice, the condominium documents would be reviewed by Town Counsel and his approval of them would be made a condition of subdivision/site plan approval, a review that the Town did not pursue.

The Town next challenges the HAB's finding that the "rural aesthetic" basis for the Board's denial was also unreasonable. The HAB found, "by a preponderance of the evidence, that it was unreasonable to deny this project based on non-compliance with 'rural aesthetic'" because the applicable factors related to rural character or aesthetic "were already considered in granting the Section 4.16 CUP density" of up to 54 units. Specifically, the HAB noted that in its application for a CUP, the Applicant had to prove that a number of conditions had been met, including:

[1] That the property in question is in conformance with the dimensional requirements of the zone, or meets Planning Board standards for the reduction in dimensional requirements, and that the proposed use is consistent with the Amherst Master Plan. . . .

. . . .

[3] That there will be no significant adverse impacts resulting from the proposed use upon the public health, safety, and general welfare of the neighborhood and the Town of Amherst.

[4] That the proposed use will not be more objectionable to nearby properties by reason of noise, fumes, vibration, or inappropriate lighting than any use of the property permitted under the existing zoning district ordinances.

6

It then reasoned that "[i]f the first, third, and fourth CUP conditions are <u>not</u> met, the rural aesthetic of the Town could be impacted." Accordingly, it ruled that the "[r]ural aesthetic is not violated as a result of the 04 January 2019 CUP approval."

Moreover, the HAB observed that in denying the application, the Board did not focus on the "elements of 'rural character'" put forth by the Town on reconsideration, but, rather, focused on density. The Board's decision itself supports this finding, as it stated that the 49 units proposed are "too much and [that] is probably an insurmountable hurdle for this applicant to overcome and at the same time preserve a rural aesthetic." As the HAB reasonably concluded, however, "[t]he 'density' concern left the station when the CUP for up to 54 units was approved in accordance with the then-existing IIHO."

The Town nevertheless contends, as it previously argued in its motion for reconsideration, that the impact on "rural character" due to the proposed project's density could again be considered at the final approval stage under Section 4.17(A) of the Town's zoning ordinance. The Town argues that the HAB erred in concluding that Section 4.17 was inapplicable to the final density determination in this case. To the contrary, the record reflects that the CUP application was submitted under the IIHO, which is Section 4.16 of the zoning ordinance, not under the Planned Residential Development provisions of Section 4.17. Accordingly, we find no error, nor can we conclude that the HAB's ruling on this issue was unjust or unreasonable. See RSA 541:13.

The Town also contends that the HAB "incorrectly claim[ed] that there is no 'good definition' of 'rural aesthetic' or 'rural character' contained in" the applicable sections of the Town's zoning ordinance. The Town argues that Section 4.16, the IIHO provision, refers to the Town's subdivision regulations "which include a list of factors to consider that pertain to 'rural character.'" (Bolding omitted.) Specifically, the Town notes that Section 201.2 of the subdivision regulations recites the objective "[t]o maintain rural character, preserving farmland, forests, grasslands, wetlands, and maintaining rural viewscapes."

The regulations' objectives, however, also further the stated purpose "to advance the goals stated in the Master Plan." As the HAB concluded, compliance with the Master Plan was considered at the CUP approval stage. We reject the Town's contention that the IIHO provision stating that "[a]ll IIHO projects are subject to the . . . Subdivision and Non-Residential Site Plan Regulations" somehow provides the Town an opportunity to reconsider determinations made when it granted the CUP, including determinations related to a "rural aesthetic."

In any event, the HAB's concerns over the lack of an "express definition" of "rural aesthetic" ultimately were not essential to its decision. Although the

7

HAB stated that "[i]n addition to the foregoing, any detailed analysis of rural aesthetic is hampered by the fact that there is no express definition of the concept within the Town Zoning Ordinance or Planning Regulations," that observation was, as the introductory language makes clear, merely supplemental or alternative to its ruling that the 2019 CUP approval demonstrated satisfaction of the "rural aesthetic" concept. In other words, the HAB observed that "[d]enying a project using the undefined concept of 'rural aesthetics' is misplaced," but nevertheless concluded that "the grant of the CUP 'for up to 54 units' satisfied this 'undefined concept.'" Having found no error with respect to the HAB's ruling that '[r]ural aesthetic is not violated as a result of the 04 January 2019 CUP approval," we need not address this argument further.

Finally, the Town argues that the HAB erred by substituting its views for those of the Board. It asserts that the HAB failed to accord the Board's decision proper deference and "disregarded the Planning Board's well-reasoned findings." Instead, according to the Town, the HAB "reviewed the Certified Record and came to its own conclusion."

The Town cites no concrete evidence of the HAB's failure to follow its statutory standard of review. Rather, the Town vaguely asserts:

> There was nothing unlawful or unreasonable in the Planning Board's decision-making as there was ample discussion and evidence in the eight (8) volumes and five (5) years' worth of material to demonstrate that the Planning Board's denial was based on facts and said facts' application to the ordinance, state law, and federal law.

The Town has failed to demonstrate error. As discussed above, the HAB reasonably determined that the Board's articulated grounds for denial were themselves unreasonable. "When reviewing the HAB's findings, our task is not to determine whether we would have found differently or to reweigh the evidence, but, rather, to determine whether the HAB's findings are supported by competent evidence in the record." Appeal of Chichester Commons, LLC, 175 N.H. at ___ (slip op. at 4). We find no error. See RSA 541:13; RSA 679:9, II.

Affirmed.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.